Thank you, your honors. It's Doug Keller on behalf of Mr. Melgar and Mr. Benito. When Congress first passed its illegal entry prohibition back in 1929, it had no real reason to think it needed to comply with the non-delegation doctrine. It wasn't really a thing back then. It wouldn't be used by the Supreme Court to strike down a statute for another five years. So when Congress passed its initial illegal entry prohibition, it didn't include an intelligible principle. It didn't provide guidance to immigration officers about how they should exercise their discretion to designate times and places for entry. And Congress hasn't fixed that problem in the intervening 90 years. So under the non-delegation doctrine, 8 U.S.C. 1325, A1 is unconstitutional. The government's, I think, primary argument is that in a series of since provided an intelligible principle. But Congress, I don't think, intended any of those statutes to provide guidance to immigration officers in 8 U.S.C. 1325, A1. We know that because they're not cross-referenced. They're not part of the same statutory scheme. They don't even mention immigration officers as the object of the delegation. And nearly all of those statutes appear in an entirely different title of the U.S. Code. So that is all to say that there's no indication that Congress thought these scattered statutes somehow guided the discretion of immigration officers in 8 U.S.C. 1325, A1. So there's a number of difficulties with this argument. I think, I mean, the first is perhaps that the Supreme Court hasn't struck down a statute under the non-delegation doctrine in probably about 100 years and has rejected a number of challenges in the time since. So what, why is Section 1325 different from all the other laws that the Supreme Court has upheld against this type of challenge? I think if we would, if a law was going to violate the non-delegation doctrine, you probably expect it to be a law that traced its history back before the doctrine was even really in existence. And I think that's what makes 1325 a little different. Every other statute the Supreme Court has addressed comes with an intelligible principle. So that's true in Gandhi. That's true in Mistretta. All those statutes themselves provide an intelligible principle. And typically the challenge on appeal is that that intelligible principle isn't sufficient in some way. And that's not my argument. My argument isn't to criticize or critique the principle at all. And... Counsel, why is this even a question? The Supreme Court said in Now v. Shaughnessy that the president has some independent authority over the question of immigration. If we're to look at the claim for exclusive control of immigration by Congress, that's Article I, Section 8, Clause 4, which only provides for a uniform rule of naturalization. This isn't a rule of naturalization. This has to do with entry. And that was among the king's prerogatives in the English system was to control the entry of aliens. Given that history and given the statement in Now v. Shaughnessy, why do we even think that Congress has to provide an intelligible principle here if the president has some amorphous but independent authority over the I agree that the president has quite a bit of authority over the question of lawful admission in allowing non-citizens to enter the country. But at the end of the day, this isn't an admission statute. This is a criminal statute. And that's where the president's power is at its weakest. It doesn't exist. That's why the Supreme Court has said that there's nothing more inherently legislative than creating crime. So if this were just a true immigration statute that dealt with certain points of entry, and then Congress is making entry outside of those points a crime, and that feels very much like to be. I don't think so. Because even in to be the I think the key to upholding that statute was the intelligible principle that Congress had provided guidance to the executive, pretty detailed guidance in that case, as I recall, to guide the discretion of the executive branch. So it wasn't really it wasn't. The executive wasn't being given a legislative power. It was simply being given a power and being guided by Congress. And so it was really using Congress's power and following this guidance here. There just isn't any guidance. And so if I so if I can point for example, to this court's very recent case in Doe v. Trump, that was also an immigration statute. And this court ultimately rejected the non-delegation challenge. But the key to the argument or the key to the court's holding was that Congress had provided guidance. There was an intelligible principle. And here, that's what I think makes the statute different than anything else is there just isn't an intelligible principle. So regardless of how I think you characterize the delegation itself, the real key is just whether there's an intelligible principle. And I just don't think the government's identified one because all they really... Why isn't the, to the extent one is needed, why isn't it intelligible to say that the Congress said that the manner of entry in the United States shall be limited by place and time? That's an intelligible principle. I don't I don't think that's that's simply the delegation of authority. I don't think that actually constrains, I guess I don't know, I wouldn't see how that constrains the authority of an immigration officer. So if I'm the immigration officer attempting to exercise this authority and I'm trying to determine what policy questions have been answered or what guidance I should follow, I don't think that really provides me any guidance. So for instance, if I'm trying to decide a port of entry at the southern border, when it should be opened or who I should let into that port, or if I should create a particular immigration program that allows certain people in outside of ports, I don't think simply telling me you must designate times and places is actually guidance at all. It's just the delegation of authority. So I think that's what makes it different. And so I don't think that really amounts to any guidance. And I do think when you look at other cases and you see the statutory scheme that Congress creates, it knows how to create an intelligible principle. And that's typically what it's done for the last hundred years, which is why I think the Supreme Court hasn't had a really difficult time upholding statutes when non-delegation challenges are raised, because typically the challenge is just the quality of advice. And here, there isn't any advice really at all. And so that's what I think makes this statute different. And that's why I think this court ought to strike it down. I think obviously the Supreme Court has indicated it probably intends to change the scope of the non-delegation doctrine. And I'm not asking this court to predict what the Supreme Court will do. But I think at the very least, this court shouldn't try to cut back on the non-delegation doctrine in the shadow of what the Supreme Court has suggested it intends to do. And I do think the government has not identified any case in which the intelligible principle wasn't aimed at the executive branch official who has delegated the authority and wasn't even in the same title of the U.S. Code. So I do think this case would be extension of what I agree is normally a pretty ineffectual and irrelevant constitutional doctrine. Counsel, I'm not aware of any iteration of the non-delegation doctrine that requires a showing of prejudice that we might require, let's say, in a due process violation. But I also thought as I read your arguments that there was a little bit of blending between your non-delegation argument and your void for vagueness argument. And a void for vagueness argument, it seems to me, you ought to be able to articulate some kind of equity for your client, something that your client didn't know. What equities do you have for your client? What didn't your client know about where to enter the United States as a result of this violation of the non-delegation principle? What was not clear to your client? I can't cite you anything, Your Honor. There's nothing that my client didn't necessarily know. I think the difference in this case, though, is that, and what makes also the void for vagueness challenge a little different than most, the classic void for vagueness challenge involves a certain word that's unclear. And because of that, the defendant arguably doesn't have notice of what was criminalized. And that's not what I'm raising here. This is a little bit of a different challenge, which is the second iteration of the vagueness doctrine, which is that it either is void for vagueness because of lack of notice or because it permits arbitrary enforcement. And here, I think that's exactly what it does. It almost, by its very words, permits arbitrary enforcement. And so, it's not what's arbitrary here. Once they put a fiscal plan at San Ysidro, what's arbitrary about that? The arbitrariness is in how they exercise their authority. So, as I noted in my brief, there are special programs the government has created for subsets of favored individuals. So, the program I talk about is the Canadian boat landing permit program. And so, it demonstrates that the executive, if it wants to, can permit people to enter outside a port of entry. The government could have, if it wanted to, done something similar for undocumented immigrants along the southern border. It hasn't chosen to do that. It doesn't have to do, if it creates a special, that sounds like an equal protection argument. If you did this for the Canadians, you have to do it for folks on the southern border as well. Doesn't sound like your argument, but that sounds like what you're arguing now at this point. Yeah, no, that's not what I'm intending to argue. I think the point I'm trying to make is just that it demonstrates the amount of discretion executive officials had and they could use. And my problem is not about that they created one program for... But I don't understand. I don't understand what's arbitrary. You're not arguing that some people who jumped over the fence were prosecuted while others who jumped over the fence weren't prosecuted. Sure. So, the arbitrariness is that when the executive chose to make one program as opposed to another, it needed some sort of standard to go by, but it didn't have a standard. The standard is just do what you want. And so, the arbitrariness is in the lack of standards to apply to. So, if you're an immigration officer and you're trying to decide, for instance, should I make this program that I just referenced? There's no standard in the regulation or the statute for you to look to. That's the problem. That is, from my perspective, where the arbitrariness creeps into the system. It's very hard to see how any of this is vague. I mean, there are designated ports of entry. Everybody knows that if you want to come into the United States, you're supposed to go through those. And if you try to cross the border miles away from one of those border stations, you're violating the law. And I don't really see why anybody would have questions about that. Well, the only thing I can reference, Your Honor, is just one. My challenge is not about the words are too slippery, like the classic vagueness challenge. It is about the arbitrary power that this law gives immigration officials. And two, it's not true that you must enter at a port of entry. So, the Canadian Boat Landing Permit Program is just one of a couple of programs that allows someone to come to the United States without going through a port of entry. But your clients aren't arguing that they thought that they were entering under the system. Just to make sure I'm clear, Your Honor, I'm not contending that they should have been. The usefulness, I think, of those examples are just to show that executive branch officials have this authority. They have the power to do... But so what? So what is that they need some sort of standard to decide what program to create. And because they have no standard, that's where the arbitrariness comes in. At the end of the day, that's sort of the crux of my complaint. And now we're back to where we started, which is the President has, as you conceded, independent authority, some independent authority, not clear what the line of division is over immigration. So what makes this arbitrary? If the President has some independent authority over this, the President can decide, well, we're going to have one set of rules for folks coming in from Canada if they're coming in at a boat port, as opposed to folks who are jumping over the fence coming from Mexico. I must have misspoke. I don't agree that the President has any authority to deal with criminal law at all. I agree with Your Honor that he has authority. No, this doesn't have to do anything with... You've jumped a step. The President hasn't created any crimes. The power to create crimes is exercised by Congress. All the President has done is define a port of authority. And Congress says, if you come outside of where the President has designated a port of entry, then that's going to be a crime. I don't see any problem whatsoever in the definition of crime. I don't even see how you can make that argument. Well, I respectfully disagree, Your Honor. I think the problem is that you're giving the executive branch the ability to define the scope of a crime, which is an inherently legislative... And that's to be. Well, to be... The difference between to be and to be is, yes, they can grant authority, but they have to provide guidance. That gets me back to, I think, my primary point, which is that, yes, you can absolutely give the executive branch the ability to define crimes, as long as you provide an intelligence principle. And here, there just isn't one. And I see I'm almost out of time. And so if I could, I'm happy to answer the questions, but I'd also like to reserve the rest of my time for rebuttal, if possible. Of course. We'll hear from you, Your Honor. Thank you. Mr. Howe, I know you may have some issues with your video, but hopefully you can hear us. And so why don't you proceed? Mr. Howe, I don't know if you're speaking, but we cannot hear you. So... Can you hear me now? Yes, we can. Why don't you go ahead? Okay. I'm sorry about the video. May it please the Court, Zach Howe on behalf of the United States. For several reasons, there is no non-delegation problem here. The first is that the delegation here addresses an inherently executive power, not held that rules for the admissibility of aliens are not just legislative, they're also inherently executive, and therefore they may be lawfully placed with the president or other executive branch officials. Now, logically speaking, the power to set conditions for admission would include the power to require entry at proper places. And in fact, Congress agrees with that. At 8 U.S.C. 1101A13 and 1182A6, Congress has said that if you enter in the wrong place, you are inadmissible. Now, the fact that Congress has chosen to make it a crime to enter at an improper place doesn't somehow convert the power to pick the proper places of entry into a purely legislative power. In fact, it doesn't do so any more than Congress's choice to criminalize entry after exclusion in 1326 converts the exclusion power into a purely legislative power. To reach any other conclusion would require the court to disagree with Knopf. And that should all but decide this case because to my knowledge, no court has ever struck down a delegation of inherently executive power. So this would be a truly revolutionary decision if the court were to find a non-delegation problem here. Now, even if that weren't enough, there are still other reasons to deny the non-delegation claim. And that's because the statute itself, as well as the overall statutory scheme, provide guidance to the executive in picking places of entry. So let me begin with section 1325 itself. That statute shows that Congress believed there should be proper places and times for entry. It shows that under section A2, those places should be places where examination and inspection can occur at the point of entry. It shows that Congress believed it should be a criminal offense to enter elsewhere. And it shows that Congress set the exact penalties for that crime. So what was left to the executive was the purely logistical or administrative task of picking where those spots of entry should be. So the statute itself contains inherent guidance. So your friend on the other side essentially said, well, you know, this would allow the executive to either close the entire border or open the entire border for travel. Why don't you respond to that? Certainly. So I don't think that's the case. And I don't think that's the case for two reasons. One is that the overall statutory scheme provides guidance that would counsel against closing the whole border or opening the entire border, perhaps a few other extreme scenarios. And you can look to the overall statutory scheme. That quote is, in fact, comes exactly from Gundy. And courts have done that repeatedly. And here, the overall statutory scheme includes the statutes we cite at pages 15 through 18 of our brief that govern how DHS and its component parts go about doing their jobs. We cite statutes governing the DHS Secretary's duties, the CBP Commissioner's duties, Border Patrol's duties, and they're responsible for operations between ports, as well as CBP officers' duties, and they're responsible for operations at ports. And essentially, there are many different ones, but what it boils down to is this. DHS must guard the border against the illegal entry of terrorists, persons, and drugs on the one hand, but on the other hand, they must facilitate the lawful entry of traffic and commerce. Now, of course, if you were to close the entire border, that would be a crushing blow to commerce and traffic. If you were to open the entire border, that arguably would permit the illegal entry of terrorists, drugs, and persons. So are these broad standards? Absolutely. But that's all that's required to pass the non-delegation test. And my friend on the other side takes issue with looking to these overall purposes found within the DHS duties and the Let me just give a few examples. If you look at this court's Leslie Salt case, the court looked to the overall purposes of the Environmental Protection Act, which amounts to protecting fish, shellfish, and wildlife, to infer guidance about how the EPA should go, should define waters of the United States. Or look at the Detroit International Bridge case from the D.C. Circuit. There, the court looked to the Secretary of State's overall, quote, mission relating to foreign affairs to infer guidance on how the Secretary should go about approving international bridges. Or if you want Supreme Court case law, you can look to Gundy, or you could look to Zimmel. In both of those cases, the guidance that the court found isn't actually articulated anywhere in the statutory scheme. SORNA does not mention a feasibility standard. The passport statute does not mention administrative practice. And yet, the court found those standards based on history and context and purpose. Well, here, we're not even asking you to go that far. You can look to actual duties that are expressly outlined in the other side give. Really, they don't apply here because we do have guidance there. And I mentioned a second point. I think the second reason is the statute itself isn't just referring to any place of entry. It's referring to ports of entry. We know that because Aldana held that. We know it because Corrales-Vasquez held that. They rely on context. They rely on history. They rely on administrative practice. And so, I think those authorities show that we're not just talking about any border patrol agent or CBP officer sort of waving a magic wand and saying, I declare this piece of border fence a place of entry, or this remote mountainous or desert area a place of entry. We're talking about ports of entry. And ports of entry are created through regulations. They're staffed by immigration officers who are capable of conducting examination and inspection at the time of entry. And, of course, only certain individuals within DHS can actually promulgate regulations. You see this at 5 U.S.C. 301, 8 U.S.C. 1103, 8 U.S.C. 1185. And it essentially amounts to the president or attorney general in some circumstances and the designated. And in this case, the DHS secretary has designated the power to create ports of entry to the commissioner of CBP in 8 CFR 100.4. So, this is the top brass of DHS creating ports of entry through regulations. This is not a sort of free-for-all where anyone can just declare parts of the border a place for entry or not. So, I think for all of those reasons, there is no non-delegation problem here. Now, I can briefly touch on the vagueness issue as well. The statute and its implementing regulations, which is what we look to under the Guo case from this court, undisputedly criminalize entry in a place other than a port of entry. And Melgar and Benito fall squarely within that prohibition. Melgar entered five miles from the nearest port of entry. Benito entered 18 miles from the nearest port of entry. So, as applied to them, there is no vagueness here. And that is the standard we use. It's an as-applied standard based on the cases we collect at pages 31, 34, and 35 of our brief from this court and the Supreme Court. Now, there's one narrow exception outside the First Amendment context. That's also an exception. But there's one narrow exception recognized by the Johnson line of cases. But this court has explained in Cashim that that only applies when you have two exceptional circumstances present. One is that the statute is so indeterminate that it would probably be vague as applied anyway. And that's not the case here for the reasons just discussed. And the second is that you're dealing with the categorical approach. And, of course, that makes sense because by its very nature, the categorical approach doesn't consider the facts of the case. It looks to the elements of the statute. Well, again, that's not the case here. So, we are absolutely in an as-applied bucket. I think the statute would pass facially anyway, but the court doesn't need to reach that question. So, for those reasons, the court should reject both the non-delegation and the vagueness arguments. And I'm happy to take other questions from the court. But if not, then I'm happy to yield the remainder of my time. Let me ask my colleagues if they have any questions for you. Okay. Mr. Howe, thank you very much. Thank you. We'll hear from you in rebuttal. Don't forget to unmute. I knew I'd do that eventually. Just two quick points. First, I think every case the parties cite involving non-delegation challenge, the court ultimately focuses on whether it's an intelligible principle or not. And so, I think the government's trying to sidestep that by arguing that the president has inherent authority here. But regardless, I think the key point is- Counsel, could you cite any other non-delegation case in which the court analyzed and under where there was an argument that there was inherent presidential authority? I think the closest case to your honor's question I can point to is this court's recent case in Dobie-Trump, the public charge case. Because there was a non-delegation challenge. What this court could have said but didn't is that this is an area inherent to the president's authority. And so, therefore, there's no need for intelligible principle. But this court didn't do that. Instead, it sort of applied the typical test and asked whether there's intelligible principle and decided in that case there was. And so, I think that's the best and most recent authority I can point your honor to. And here, my sort of second related point is there just isn't actually an intelligible principle. I think the government wants you to grab from different titles, even different statutes, and divine an intelligible principle. That's just not what Congress intended. The SORNA case, for instance, the government cites to- In SORNA itself, you could read SORNA as a whole and figure out an intelligible principle. This court- I'm sorry, this court didn't look to different titles and different statutes passed at different times to try to get an intelligible principle. And so, I think that's what makes this case in a statute odd and different. Okay. I think we have your argument, Mr. Kellery. Thank you, your honor. Thank you very much. Thank you. Okay. These cases are submitted. And we'll now turn to our matter on the calendar, which is 19-56504 and 25-5428, overrated production versus UMG recordings.
judges: Bybee, Cardone, Bress